**Lewis Roca Rothgerber LLP**
One South Church Avenue, Suite 700
Tucson, AZ 85701-1611

Robert M. Charles, Jr. (State Bar No. 7359)
Direct Dial: 520.629.4427
Direct Fax: 520.879.4705
E-mail: RCharles@LRRlaw.com

Marvin C. Ruth (State Bar No. 024220)
Direct Dial: 602.262.5770
Direct Fax: 602.734.3909
E-mail: mruth@lrrlaw.com

Jeffrey L. Sklar (State Bar No. 026372)
Direct Dial: 520.838.7742
Direct Fax: 520.879.4712
E-mail: jsklar@lrrlaw.com

Attorneys for Farm Credit Services Southwest

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>☒ D&E Dairy Farms, LLC,<br>                Debtor. | Chapter 11 Proceedings<br><br>No. 4:14-bk-16069-BMW<br>No. 4:14-bk-16072-BMW<br>No. 4:14-bk-16073-BMW<br><br>(Jointly Administered)<br><br>**OBJECTION OF FARM CREDIT SERVICES SOUTHWEST TO MOTION TO OBTAIN EMERGENCY AND FURTHER POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c) AND 11 U.S.C. § 105**<br><br>Hearing Date: November 6, 2014<br>Hearing Time: 1:45 p.m. |
| In re:<br>☒ Daniel Nowlin Farms General Partnership,<br>                Debtor. | |
| In re:<br>☐ Daniel Nowlin and Elaine Nowlin,<br>                Debtors. | |
| This Filing Applies to:<br>☐ All Debtors<br>☒ Specified Debtors | |

Farm Credit Services Southwest ("Lender") objects to Debtors' Motion to Obtain Emergency and Further Post-Petition Financing Pursuant to 11 U.S.C. § 364(c) and 11 U.S.C. § 105 ("DIP Financing Motion") and Supplement to Motion to Obtain Emergency and Further Post-Petition Financing Pursuant to 11 U.S.C. § 364(c) and 11 U.S.C. § 105 ("Supplement").

The DIP Financing Motion and Supplement seek authority for Debtor Daniel Nowlin Farms General Partnership ("DNF") to borrow at least $880,000 from Milky Way Dairy, LLC ("Milky Way") and Debtor D&E Dairy Farms, LLC ("D&E"), so DNF can plant and harvest oat crops in the next few months. But based on Debtors' own projections, the crop would be worth only $900,000. Given the likelihood that DNF will seek court approval for even more borrowing before the crops are harvested, there is little chance that DNF's harvest would be profitable. The Court should deny the DIP Financing Motion on that basis alone.

The DIP Financing Motion also lacks sufficient explanation of several other proposed loan provisions. It fails to explain why Milky Way needs a lien on estate property when the motion asserts the loan would be repaid in full in less than six months. It also provides no comprehensive explanation of how the proposed advances from D&E to DNF will be used, or any precision on the amounts D&E proposes to advance. The proposed loan contains no real protections for D&E.

Finally, the DIP Financing Motion appears to seek $400,000 to make lease payments on a lease or leases without approval by this Court. Debtors have neither assumed a lease under Section 365 nor sought to approve post-petition transaction under Section 363. Therefore, the Court should deny the DIP Financing Motion at this time.

**I.    THE MOTION LACKS IMPORTANT FACTUAL INFORMATION.**

By the DIP Financing Motion, Debtors request an order: (1) authorizing the borrowing by DNF of up to $100,000 in post-petition financing from Milky Way, on an emergency basis, to pay planting expenses for the oat crop that Debtors say is now being planted, with such financing to be secured by an assignment of the oat crop to Milky Way;

(2) authorizing the further borrowing by DNF of up to $400,000 from Milky Way to pay lease payments due December 15, 2014 on leased farmland used to grow the oat crop, with such financing to be secured by an assignment of the oat crop; and (3) authorizing D&E to advance postpetition dairy income to DNF for ongoing working capital needs.

In the Supplement, Debtors explain that the advances from D&E would total $231,000 from D&E's November 2014 milk proceeds, and $149,000 from D&E's December 2014 milk proceeds. This totals $380,000. All this money is Lender's cash collateral. DNF owes Lender approximately $4.7 million on two notes, and that the debt is secured by less than $550,000 in collateral. *See* Initial Objection to Debtors' Emergency Motion to Determine Adequate Protection and Appoint Disbursing Agent [Dkt. #20] at 5:8-13.

Debtors state that the amounts proposed to be advanced by D&E "are subject to change and may be updated at the hearing on the Motion as the budgets for DNF are further refined." Supplement at 2:15-16. Lender would be surprised if these numbers are "refined" in any way but up.

Lender's suspicions are justified by the lack of detail in the DIP Financing Motion, the supporting declaration, and the Supplement. The unanswered questions include:

- What is the total cost of the oat crop being financed? In other words, this is only the initial financing, but additional moneys will be spent until the oats are cut. How much and when?

- How will the total cost be paid for? The DIP Financing Motion implies that this is only the first of an ongoing series of proposed loans.

- What is the estimated market value of the oat crop being financed? Debtors assert the oat crop will be worth $900,000. The Court cannot possibly evaluate that claim. For example, if the crop has been sold today, then the Court knows the sales price (but no contract has been approved). On the other hand, if the crop will be sold on the spot market when it is cut, there is no way to know the sales price. Nor can anyone confidently predict the crop yield per acre now, which can dramatically change with weather and other risks farmers are familiar with.

- What, if any interest is D&E given in the oat crop, noting that Milky Way is receiving an assignment of proceeds?
- What are the terms of the lease or leases where payments are due December 15? Who are the counterparties and what burdens are being imposed on the Debtor(s)? Are these the only lease payments due or are more payments due in the future?
- This is an interim, emergency motion. What is the amount that DNF must borrow between now and the final hearing on the DIP Financing Motion?

Inevitably, what Debtors have explained raises more questions than answers. For example:

- Debtors say they own 318 acres of farmland. *See* DIP Financing Motion at 13:12-13 (Declaration of Daniel Nowlin). To Lender's knowledge, this is land owned by Daniel and Elaine Nowlin, which has been fallow for four years. What does that have to do with the DIP Financing Motion? Are Debtors going to incur the expense to put this land into production?
- DNF also purports to have a leasehold interest in 2,300 additional acres. *See id*. What are the terms and counterparties to 2,300 acres of farm leases?
- Which farmland will be cultivated with oats? Debtors claim they want to plant an oat crop on approximately 1,000 acres. *See* Supplement at 2:18-19. What is to be done with the remaining acreage?
- Has the long term relationship between Debtors and Milky Way been profitable? That seems unlikely in light of the losses DNF reports on its tax returns.
- What is the amount proposed to be used for each category of expenses identified by Debtors, including fuel, fertilizer, water, and labor[1].
- After the oat crop is chopped, is there to be another crop? How will that be paid for?
- Debtors claim that the crops grown by DNF are used to feed D&E's cattle (though under the financing they propose, substantial amounts will also be sold to Milky Way). If D&E purchased feed on the open market, how much would that cost? Debtors have provided no information at all about alternative sources of feed.

---

[1] These expenses are identified in the Declaration of Daniel Nowlin in Support of the DIP Financing Motion, at ¶ 7 of the Declaration.

These are time sensitive questions. It takes no imagination to appreciate that once Debtors invest in leases and a crop they will demand the right to keep borrowing every dollar needed to harvest the crop and perform the leases. Thus, the decision made by the Court on an interim, emergency basis will have consequences that last for months.

## II. THE COURT SHOULD DENY THE DIP FINANCING MOTION BECAUSE THE PROPOSED LOANS ARE ALMOST CERTAIN TO RESULT IN A LOSS TO THE ESTATE.

A court should approve financing under Section 364(c) only where the proposed terms are fair, reasonable, and adequate. *In re St. Mary's Hosp.*, 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988). The Court should not simply a debtor's word that it could not obtain better terms. *See, e.g.*, *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (denying motion for debtor-in-possession financing with administrative priority where unsecured credit was likely available); *see also In re Ames Dept. Stores*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) ("A court, however, may not approve any credit transaction under subsection (c) unless the debtor demonstrates that it has reasonably attempted, but failed, to obtain unsecured credit under sections 364(a) or (b).").

The proposed loan is not fair, reasonable, or adequate. Debtors seek to borrow $880,000, of which $500,000 is proposed to come from Milky Way and $380,000 from D&E. DNF will also have to pay 5 percent interest to Milky Way over at least six months, which will add another $12,500 to the cost of the loan. All of this is to harvest a crop that, according to Debtor's unsupported projections, will yield only $900,000.

In other words, even if Debtors do not borrow a penny more than they are now requesting, and even if the crop yields every penny that they claim, DNF's total profit will be $7,500. More likely, the result will be a loss to DNF.

This is a not a fair or reasonable deal, and the loser is the bankruptcy estate. The cash collateral will be depleted, and the amount ultimately payable to creditors will be reduced. Although Debtors have proposed giving Lender a replacement lien in D&E's cash collateral and the proceeds thereof, which would presumably include sale proceeds from the harvest, there is little chance that Lender's collateral will maintain its current

value. Debtors have proposed no adequate protection payments to compensate. The Court should reject the DIP Financing Motion for this reason alone.

### III. DEBTORS HAVE FAILED TO DEMONSTRATE WHY MILKY WAY REQUIRES A SECURITY INTEREST IN THE CROPS.

The proposed financing is even less fair because it seeks to provide Milky Way with a lien on the crops planted by DNF. Presumably, Debtors seek this relief under Section 364(c)(2), which authorize the "incurring of debt … secured by a lien on property of the estate that is not otherwise subject to a lien." Such relief is appropriate only if Debtors can demonstrate that they could not obtain unsecured credit. *In re Crouse Group, Inc.*, 71 B.R. 544, 550 (Bankr. E.D. Pa. 1987) (requiring debtors to make "exhaustive unsuccessful efforts to obtain" unsecured credit).

Debtors have failed to explain why such a lien is necessary, nor have they adequately demonstrated that they have tried to obtain an unsecured loan. They simply ask the Court to rely on their business judgment. As discussed above, it need not and should not. As Mr. McGrath has stated on the record, Debtors have been working with Mr. Linscott and Mr. McGrath for months. They have had ample opportunity to engage in pre-bankruptcy planning, and that oat-harvest season is approaching should be no surprise. Their manufactured emergency does not justify favorable treatment to Milky Way.

Thus, if the Court approves the loan from Milky Way, it should not allow Milky Way to obtain a lien. Rather, the loan should be deemed unsecured, but with a priority above administrative expenses, under Section 364(c)(1).

### IV. IF D&E MAKES ADVANCES, THEY SHOULD BE LIMITED AND ONLY WITH REASONABLE PROTECTIONS

The DIP Financing Motion says nothing about a limit on the interim loans or whether D&E would obtain a lien in DNF's crops in connection with advances it provides. Based on this lack of detail, if the Court allows D&E to make advances and allows Milky Way to obtain a lien, it should also require that D&E obtain a lien of equal priority to Milky Way's. This is important for two reasons. First, D&E's proposed advances would be for the same purposes as Milky Way's proposed loan. If Milky Way is allowed to

obtain a lien, providing D&E a lien will ensure that the two creditors are treated equally. Second, providing D&E a lien would protect Lender. The proposed advances involve Lender's cash collateral, and unless Lender obtains a lien in the crops, it would not be adequately protected.

The loan from D&E to support DNF should further be repayable under § 364(c)(1) with priority over all expenses of administration of DNF. Otherwise, funds that should be used to pay claims of D&E creditors will be used to pay the administrative expenses of DNF.

## V. DNF IS IMPROPERLY SEEKING TO ASSUME A PRE-PETITION LEASE WITHOUT AUTHORITY UNDER SECTION 365, OR TO ENTER INTO A NEW LEASE WITHOUT SECTION 363 AUTHORITY.

Of the $500,000 that Debtors seek to borrow from Milky Way, $400,000 is evidently intended for lease payments. Debtors do not identify the landlord or the property on which the lease payments are to be made. Is it for all 2,300 acres that are purportedly leased? Or only for the 1,000 acres on which the oat crops are grown? Moreover, who is the owner? These issues are significant in part because, as discussed above, the owners of 318 acres are Daniel and Elaine Nowlin themselves, a fact that Debtors do not disclose. FCSS understands that the Nowlin land is and has been fallow. Logically, that land has nothing to do with the motion, but if Debtors are seeking to use funds from either Milky Way or D&E to make lease payments on that land, the Court must reject that request.

Debtors also do not explain if the leases on which payments will be made are pre-petition leases, which must be assumed under Section 365, or new post-petition leases, which must be approved under Section 363. No lease terms are disclosed. What obligations are imposed on the estates through these undisclosed agreements?

Under the circumstances, Debtors should be denied interim authority to make the proposed loans absent an appropriate factual record.

DATED November 5, 2014.

**LEWIS ROCA ROTHGERBER LLP**

By: */s/ Robert M. Charles, Jr.*
    Robert M. Charles, Jr.
    Marvin C. Ruth
    Jeffrey Sklar
Attorneys for Creditor Farm Credit Services Southwest

# CERTIFICATE OF SERVICE

I certify that on this 5th day of November, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Michael McGrath
Isaac D. Rothschild
David J. Hindman
MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, AZ 85701
Email: mmcgrath@mcrazlaw.com
　　　　irothschild@mcrazlaw.com
　　　　dhindman@mcrazlaw.com
*Attorneys for Debtor*

Ilene J. Lashinsky
United States Trustee
Edward K. Bernatavicius
Trial Attorney
District of Arizona
230 N. First Ave., Ste. 204
Phoenix, Arizona 85003-1706
Email: edward.k.bernatavicius@usdoj.gov

S. Cary Forrester
Forrester & Worth, PLLC
3636 North Central Avenue, Suite 700
Phoenix, AZ 85012
Email: scf@forresterandworth.com
*Attorneys for Alice L. Johnson-McKinney and*
*Becky Denise Johnson-Cecil*

Steven M. Cox
Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C.
Williams Center, Eighth Floor
5210 East Williams Circle
Tucson, AZ 85711
Email: smcox@wechv.com
*Attorneys for Dennis Nowlin, Jr.*

James E. Cross
Cross Law Firm, P.L.C.
1850 North Central Avenue, Suite 1150
Phoenix, AZ 85004
Email: jcross@crossbcs.com
*Attorneys for Linda Johnson*

1  Shelton L. Freeman
   Freeman Huber Law PLLC
2  6909 East Main Street
   Scottsdale, AZ 85251
3  Email: tfreeman@fhlawaz.com
   *Attorneys for Anthony and Lynn Serrano,*
4  *Beau Joseph and Kristin Serrano*

5    /s/ Renee L. Creswell
   Lewis Roca Rothgerber LLP