THIS ORDER IS APPROVED.

Dated: November 10, 2014



Brenda Moody Whinery, Bankruptcy Judge

MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: mmcgrath@mcrazlaw.com
irothschild@mcrazlaw.com
By: Michael McGrath, # 6019
Isaac D. Rothschild, # 25726
70066-2
Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>☒ D&E DAIRY FARMS, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>No. 4:14-bk- 16069-BMW<br>No. 4:14-bk- 16072-BMW<br>No. 4:14-bk- 16073-BMW<br><br>(Jointly Administered) |
| In re:<br><br>☒ DANIEL NOWLIN FARMS GENERAL PARTNERSHIP,<br><br>Debtor. | |
| In re:<br><br>☐ DANIEL NOWLIN AND ELAINE NOWLIN,<br><br>Debtors. | |
| This Filing Applies to:<br>☐ All Debtors<br>☒ Specified Debtors | |

**INTERIM ORDER FOR EMERGENCY USE OF CASH AND FOR ADEQUATE PROTECTION**

This matter came before the Court upon the DEBTORS' EMERGENCY MOTION TO DETERMINE ADEQUATE PROTECTION AND APPOINT DISBURSING AGENT (DE 5). The Debtors in possession, D&E Dairy Farms ("D&E") and Daniel Nowlin Farms ("DNF"), and their principals, Daniel and Elaine Nowlin ("Nowlin") (collectively the "Debtors") seek the entry of an order:

(a) authorizing Debtors to use proceeds of Debtors' agricultural operations, which are claimed to be "Cash Collateral," 11 U.S.C. §363(a),

(b) granting certain substitute and additional liens and other protection for the benefit of Lender.

Having considered the Debtors' Motion, and the attached Declarations of the proposed Financial Advisor, Christopher Linscott, and the proposed Disbursing Agent, Fred Boice, and the Omnibus Declaration of Daniel Nowlin in Support of Debtors' Chapter 11 Petitions and First Day Motions (DE #4), Farm Credit Services Southwest's Initial Objection To Debtors' Emergency Motion To Determine Adequate Protection And Appoint Disbursing Agent (DE #20) and supporting declaration, the United States Trustee's Response To Debtor's First Day Motions (DE #24), and the Second Declaration Of Christopher G. Linscott (Adequate Protection) (DE #29), and the presentation made at the emergency hearing on October 30, 2014, and further good cause appearing,

**THE COURT FINDS, CONCLUDES AND ORDERS AS FOLLOWS:**

1. On October 24, 2014 ("Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona ("Court"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, Debtors have possession of their property and continue operate their businesses as debtors-in-possession.

2. The Court has approved joint administration of these three Estates.

3. Good cause has been shown for the entry of this Order. The terms of the

use of claimed Cash Collateral authorized hereby are fair under the circumstances and reflect Debtors' exercise of prudent business judgment consistent with its fiduciary duties.

4. Pursuant to the Dairy Farm Lease / Purchase between J&K Dairy Farms ("J&K"), LLC and D&E Dairy Farms, LLC ("D&E"), dated February 27, 2012 ("Lease"), D&E is the transferee of certain livestock, milk base, feed, equipment, facilities, and other property described in the Lease ("Transferred Property"). Any accounts, proceeds, or products of the Transferred Property, including milk proceeds, are property of the D&E bankruptcy estate.

5. In compliance with the requirements of Rule 4001(b) of the Federal Rules of Bankruptcy Procedure and Rule 2002-1 of the Local Rules of the United States Bankruptcy Court, Debtors have provided sufficient notice of the hearing on the Motion, as was practicable under the circumstances to: (a) Farm Credit Services Southwest, the "**Lender**" or "**FCSS,**" (b) the 20 largest unsecured creditors of each of the three jointly administered Debtors, (c) applicable taxing authorities listed on the Master Mailing List which includes, (d) other creditors listed who may assert an interest in Debtors' assets, and (e) the Office of the United States Trustee.

6. Lender has consented to Debtors' use of claimed Cash Collateral, since the filing date through the hearing on this emergency Motion, for reasonable, necessary and customary operating expenses to the extent detailed in the letter from Lender's counsel to Debtors' counsel dated October 23, 2014, attached here as Exhibit 1.

7. Debtors require the use of claimed Cash Collateral for the payment of, *inter alia*, their operating and other expenses necessary to preserve assets and to continue the farming and dairy operations. Fred Boice shall deposit into a segregated debtor in possession account $65,000 per month pro-rated to the petition date as an estimate of the market value of silage consumed on a monthly basis, and Lender shall

have a security interest in said account to the same extent, priority and enforceability as it had in the silage on the petition date.

8. In consideration for the Debtors' use of claimed Cash Collateral, Lender is entitled to have its interest therein adequately protected as set forth in this Order.

9. As adequate protection for Lender's interests in its claimed Collateral, pursuant to 11 U.S.C. Sections 361 and 363, Lender is hereby granted on an interim basis and subject to any changes, additions or deletions as may be provided in a final Order: (a) security interests in and upon the Cash Collateral Account described below, (b) a replacement lien in the Debtors' tangible real and personal property, including without limitation farm products, equipment, inventory, accounts, contract rights, documents, chattel paper, accounts receivable, supplies, general intangibles, livestock, feed, milk, milk products, milk base and history, to the same extent, priority and enforceability of Lender's pre-petition lien; (c) a cash payment of $6,250 allocated by Mr. Boice among the debtors with the next UDA milk payment to protect the depreciation of Lender's interest in the Debtors' tangible personal property for the period of the petition date to November 30, subject to true up by agreement or further order of the Court; (d) the appointment by the Court of Fred Boice as an Estate Disbursing Agent; (e) Debtors' continued maintenance of property and casualty insurance on all Collateral as set forth below; (f) Lender's lien on DNF loans set forth below; and (g) Debtors maintaining the level of their owned and leased cattle at about 2,000 head, milking cows and bulls, the approximate head count on the Petition Date, excluding 133 head of Sunshine Dairy leased heifers.

10. On behalf of D&E, Fred Boice may pay the actual, necessary, and reasonable expenses of ordinary maintenance and operation of the business of D&E to be incurred in the ordinary course of business. This initial authorization is on an interim basis through the conclusion of the final hearing set below. Mr. Boice shall account weekly to Lender for such payments.

11. On behalf of D&E, Fred Boice shall deposit into a segregated debtor in possession account as Lender's cash collateral $65,000 per month pro-rated to the petition date as an estimate of the market value of silage consumed on a monthly basis. Payments shall be bi-monthly, and the first payment of $32,500 shall be due upon Debtors' receipt of the next UDA payment, and then bi-monthly thereafter as UDA payments are received.

12. With the prior consent of Lender, on one business days' notice, on behalf of DNF, Fred Boice may advance funds from D&E to DNF in order to pay the actual, necessary, and reasonable expenses of ordinary maintenance and operation of the business of DNF incurred in the ordinary course of business. This initial authorization is on an interim basis through the conclusion of the final hearing set below. Such advances from D&E shall be deemed loans under 11 U.S.C. § 364. Lender shall have a lien on such loans and their proceeds.

13. The Disbursing Agent shall be guided by the preliminary draft Budgets attached to the Declaration of Christopher Linscott, filed in conjunction with the Cash Collateral Motion. Mr. Boice may make such additional expenditures as are required to preserve and maintain the Debtors' businesses as going concerns. Permitted expenditures may include payment for feed and forage which has been delivered to the Debtors' businesses on consignment. Mr. Boice shall be authorized to pay insurance on the estates' assets. All payments to be made by Mr. Boice must be required by the operation of the Debtors' businesses. During the term of his appointment and pending a final order, Mr. Boice shall be paid without further order of this Court not more than $4,000 per month for his role as Disbursing Agent.

14. Lender is not granted a security interest or lien in any cause of action of the Estate arising under Sections 544, 545, 547, 548, 549 or 553(b) of the Bankruptcy Code. Nothing in this Order shall in any way restrict the scope of Lender's prepetition

liens, security interests, mortgages, rights of setoff or claims with respect to its prepetition collateral, or the proceeds, rents, products or profits thereof. Nothing contained in this Order or otherwise, and no action or inaction of Lender shall be deemed to be a consent by Lender to any charge, lien, assessment or claim against the Collateral.

15. UDA is directed to send payment for milk due D&E Dairy and J&K Dairy to Debtors' segregated debtor-in-possession account at Wells Fargo Bank. The wire instruction for such account is Routing Number: 121000248 and Account Number: 6262972984, and is hereafter the Cash Collateral Account.

16. Nothing contained in this Order shall constitute a determination that Lender's interests are adequately protected and Lender reserves its right to request, and to the extent appropriate, receive alternative or additional forms of adequate protection, including but not limited to additional adequate protection payments from Debtors. Debtors reserve all rights to object to any such request by Lender.

17. Mr. Boice shall collect and account for all income and receivables from Debtors' dairy and farming operations, including but not limited to the proceeds from the United Dairymen of Arizona. All such proceeds shall be deposited into the Cash Collateral Account.

18. Mr. Boice shall pay the Lender any monthly adequate protection payment ordered by the Court.

19. Debtors may not use any claimed Cash Collateral to pay any expenses of estate professionals without a further order of this Court.

20. On or before the final hearing on this Motion, Debtors shall file a summary of all expenditures made for operating expenses. Debtors are required to timely file all monthly Operating Reports, Statements of Assets and Liabilities and Schedule of Financial Affairs, as well as meet all requirements imposed by the Office

of the United States Trustee.

21. Debtors shall provide, make available and otherwise permit access to such financial and operating information as representatives of and auditors for FCSS may reasonably request from time to time. FCSS shall have the right to inspect its Collateral in the ordinary course of business. Furthermore, except where inconsistent with applicable bankruptcy law or orders of this Court, Debtors shall fully comply with the obligations as set forth in the FCSS Loan Documents with respect to Lender's rights of inspection.

22. As soon as they are available, Debtors shall promptly provide FCSS upon reasonable request with all operating reports, financial statements, general ledgers, check registers and copies of cancelled checks, and reports of any kind provided to or generated by Debtors, or Debtors' accountants.

23. FCSS is granted replacement or continuing liens on and security interests in the following assets:

a. Dairy Real Estate;

b. Debtors' Equipment;

c. Livestock in the Debtors' collateral;

d. Feed;

e. Milk Base;

f. CYDY Penny Stocks;

g. FCSS Stock;

h. Accounts receivable;

i. Joharra/Nowlin Land;

j. Milk inventory.

24. The replacement liens and security interests granted in this Order are valid, enforceable, and of the same priority as existed pre-petition. No filing or

recordation or any other act in accordance with any applicable local, state, or federal law is necessary to create or perfect such lien and security interest. Debtors shall execute and deliver to FCSS such documents as FCSS may reasonably request to evidence the replacement liens granted herein.

25. Debtors shall maintain property and casualty insurance upon all of the Lender's Collateral, with Lender named as an additional loss payee and party entitled to notice of any adverse policy actions.

26. If Debtors fails to fully and timely perform any provision, term or condition of this Order, Debtors shall be in default. In the event of a default, should FCSS shall give written notice to Debtors of the default and of its withdrawal of consent to the use of its Cash Collateral, Debtors consent and will fully participate in securing an emergency hearing on any request to terminate Debtors' right to use Cash Collateral. Notice of any default shall be provided to Debtors via notice to the following by fax, regular mail, overnight delivery or hand delivery at the following address:

Michael McGrath, Esq.
Mesch, Clark & Rothschild, P.C.
259 Meyer Avenue
Tucson, Arizona 85701-1090
Facsimile: (520) 798-1037

Fred T. Boice
Mr. Fred T. Boice
4741 Paseo del Bac
Tucson, Arizona 85718
Facsimile (520) 638-7775

27. To the extent the replacement liens and security interests are insufficient to compensate FCSS for the Cash Collateral used, FCSS shall have the right to seek an administrative claim under 11 U.S.C. §§ 503(b) and 507(a)(1), with the super priority status set forth in 11 U.S.C. § 507(b) to the extent of any deficiency. Debtors retain all rights to object to the allowance of such a claim, or otherwise object to the relief sought.

28. Nothing contained in this Stipulated Order shall be deemed or be construed to waive, reduce, or otherwise diminish the rights of FCSS to seek additional or different adequate protection of its interests under the loan documents, to seek relief from the automatic stay, or to take any other action in this bankruptcy case, including but not limited to, seeking relief from the automatic stay or from seeking other forms of adequate protection at a later time. Furthermore, nothing contained in this Stipulated Order shall be deemed or be construed to be an admission that FCSS is adequately protected. Similarly, nothing in this Order shall prejudice the rights of the Debtors to seek relief or remedy as provided under applicable law, or to propose alternate means of adequate protection.

29. By agreeing to this Stipulated Order, Debtors do not waive their rights with respect to determination of the allowed amount of FCSS's secured claim pursuant to 11 U.S.C. § 506(a) & (b), including how adequate protection payments shall be applied in calculating the allowed claim, nor does FCSS.

30. This Stipulated Order is a product of negotiation among the parties hereto and represents the jointly conceived, bargained-for, and agreed-upon language mutually determined by the parties to express their intentions in entering into this Stipulated Order. Any ambiguity or uncertainty in this Stipulated Order shall be deemed to be caused by or attributable to the parties hereto collectively. In any action to enforce or interpret this Stipulated Order, the Stipulated Order shall be construed in a neutral manner, and no term or provision of this Stipulated Order, or the Stipulated Order as a whole, shall be construed more or less favorably to any one party to this Stipulated Order.

31. The parties further represent and warrant to each other as follows:

a) Each party hereto has received independent legal advice from attorneys of that party's choice with respect to the advisability of

entering into this Stipulated Order, and prior to the execution of this Stipulated Order, that party's attorney reviewed this Stipulated Order and discussed the agreement with the party, and the party has made all desired changes.

b) Except as expressly stated in this Stipulated Order, no party hereto has made any statement or representation to any other party hereto regarding the facts relied upon by said party in entering into this Stipulated Order, and each party hereto specifically does not rely upon any statement, representation, or promise of any other party hereto in executing this Stipulated Order, except as expressly stated in this Stipulated Order.

32. Subject to the terms and conditions contained in this Order, Debtors may use claimed Cash Collateral through a final hearing on the Motion as is contemplated by Rule 4001 of the Bankruptcy Rules. The final hearing is hereby set on December 15, 2014 at 11:00 o'clock a.m. in the United States Bankruptcy Court, 38 S. Scott Avenue, Tucson, Arizona 85701 in the Court/Hearing Room for the Honorable Brenda M. Whinery. Lender's consent and the term of this Order shall expire at the conclusion of the final hearing.

**DATED, SIGNED AND ORDERED ABOVE**

**AGREED**

By:____________________
Michael McGrath
Isaac D. Rothschild
**MESCH, CLARK & ROTHSCHILD, P.C.**
Attorneys for Debtors

By: [signature]

Robert M. Charles, Jr. with permission

**LEWIS ROCA ROTHGERBER LLP**

Attorneys for Farm Credit Services Southwest

5081077_4

# Exhibit 1



Lewis Roca Rothgerber LLP
One South Church Avenue, Suite 700
Tucson, AZ 85701

**Robert M. Charles, Jr.**
Admitted in Arizona and Nevada
(T) 520.629.4427 (F) 520.879.4705
RCharles@LRRLaw.com

Our File Number: 300494-00002

October 23, 2014

Michael McGrath
MMcgrath@mcrazlaw.com
Mesch, Clark & Rothschild, P.C.
259 North Meyer Avenue
Tucson, AZ 85701-1090

Isaac D. Rothschild
IRothschild@mcrazlaw.com
Mesch, Clark, & Rothschild, PC
259 N. Meyer Ave.
Tucson, AZ 85701-1090

RE: Farm Credit Services Southwest/D&E Dairy – Feed Needs

Dear Michael and Isaac:

I am responding to Isaac's letter of October 27, 2014.

Farm Credit Services Southwest will wire the UDA proceeds to the Wells Fargo Bank separate DIP account you identify. All collateral proceeds should go into that account.

The request for approval of budgeted feed needs totaling $90,160 is approved, with a couple of conditions. First, that variances of 5% or more must be prior approved by FCSS. Second, that no payments to insiders or on pre-petition loans be made without FCSS prior approval.

The requests for approval of fuel for the dairies, health insurance for dairy employees, and property and casualty insurance on the dairies are approved. I assume these will be funded into a DIP operating account and paid separately out of the operating account so they can be tracked.

Let's discuss use of dairy proceeds to pay farm expenses.

Sincerely,

Rob Charles

Robert M. Charles, Jr.

RMC:rlc

5071896_1